IN RE: S.J .
No. COA08-132
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
Jennifer Rose Kletter, for Pitt County Department of Social Services, petitioner-appellee.
Lisa Skinner Lefler, for respondent-appellant-mother.
WYNN, Judge.
After finding that at least one of the statutory grounds exists, a trial court has discretion to terminate parental rights only upon also finding that it would be in the child's best interest.[1] Here, after a careful review of the record before us, we conclude that the trial court based its decision to terminate Respondent-mother's parental rights upon evidence that supported its finding that such grounds for termination existed, and that termination was in the best interest of the minor child. We therefore affirm the order of termination.
In October 2005, Respondent-mother gave birth to S.J., who tested positive for crack cocaine when he was born. Respondent-mother has an extensive criminal record and a history with Child Protective Services in Cleveland and Pitt Counties dating back to February 2002, including previously losing custody of her older child to the Department of Social Services (DSS). The biological father of S.J. is unknown; although Respondent-mother identified two men as possible fathers, both were excluded by genetic testing. After S.J.'s birth, Respondent-mother entered the Walter B. Jones Alcohol and Drug Abuse Center in Greenville on 16 December 2005 to begin a substance abuse treatment program. Respondent-mother stayed at the facility until 6 January 2006; she tested positive for a high level of cocaine in a drug screen conducted on 12 January 2006.
Thereafter, Respondent-mother moved with S.J. into the Zoe House, a halfway house in Greenville, where she remained until mid-February 2006. During that time, DSS received reports from Zoe House staff that Respondent-mother had violated curfew twice, leaving S.J. in the care of Zoe House staff overnight, and had abused cocaine. On 20 February 2006, Respondent-mother moved back to the Walter B. Jones facility and agreed not to leave until she had completed treatment there. Three days into her stay, Respondent-mother was discharged for violating the rules of the program by missing a Narcotics Anonymous meeting and leaving S.J. unattended while she went to use a pay phone.
DSS filed a petition on 23 February 2006 alleging S.J.'s neglect and dependency, and S.J. was taken into nonsecure custody and placed into foster care. Since that time, Respondent-motherhas been in and out of jail on various criminal charges and has continued to suffer from ongoing substance abuse problems. As found by the trial court, Respondent-mother has largely failed to comply with the case plan developed by DSS; not maintained stable housing or employment; not undergone court-ordered psychological evaluation or parenting skills classes; and failed to complete an in-patient substance abuse program since S.J. was taken into custody. S.J. has been in the same foster home since DSS took custody, and his current foster mother has expressed a strong interest in adopting him. According to DSS, S.J. has thrived in his foster home and now shows no developmental delays related to his testing positive for crack cocaine at birth.
On 9 May 2007, DSS filed a petition to terminate Respondent-mother's parental rights to S.J., alleging five grounds for termination: (1) neglect; (2) failure to make reasonable progress; (3) willful failure to pay reasonable support; (4) failure to establish paternity; and (5) willful abandonment. After conducting adjudicatory and disposition hearings, the trial court entered an adjudication order on 26 October 2007 finding that all five grounds existed to terminate Respondent-mother's parental rights, and a disposition order on 26 October 2007 finding that termination would be in S.J.'s best interest and therefore terminating Respondent-mother's parental rights.
Respondent-mother now appeals, arguing that (I) the evidence and the trial court's findings of fact and conclusions of law were insufficient to support any of these grounds; and (II) the trialcourt erred by concluding that termination of Respondent-mother's parental rights is in the best interest of the child.

I.
First, Respondent-mother challenges each of the grounds for termination found by the trial court, arguing that they are not supported by the evidence or by the findings of fact. We disagree.
When reviewing a termination proceeding, this Court "should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law." In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996). Findings of fact are conclusive on appeal if they are supported by "ample, competent evidence," even if there is evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). Moreover, a court "may terminate the parental rights upon a finding of one or more" of the statutory grounds specified in the Juvenile Code. N.C. Gen. Stat. § 7B-1111(a) (2005) (emphasis added); see also In re J.A.A., 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005) ("The trial court can terminate a respondent's parental rights upon the finding of one of the grounds enumerated in N.C. Gen.Stat. § 7B-1111(a).");In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984) ("A finding of any one of the . . . separately enumerated grounds is sufficient to support a termination.").
In the instant case, evidence in the record supports the trial court's finding and conclusion that S.J. is neglected. See N.C. Gen. Stat. 7B-101(15) (2005) (defining a neglected juvenile as onewho "does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]"); N.C. Gen. Stat. § 7B-1111(a)(1) (naming neglect as a basis for termination of parental rights). Although a prior adjudication of neglect, standing alone, is insufficient to terminate parental rights on the grounds of neglect, the trial court may consider such an adjudication as well as the probability of a repetition of neglect, in determining that neglect exists as a grounds at the time of the termination hearing. In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).
Here, the trial court made the following relevant findings of fact:
25. Since the juvenile was taken into custody, the juvenile has continued to be neglected in that the respondent mother has not complied with orders of the Court in 06 JA 64; has failed to complete an inpatient substance abuse program since the child was taken into custody, although the respondent mother did complete substance abuse treatment at Walter B. Jones prior to the child coming into custody; respondent mother has not had a psychological evaluation; and has not maintained stable housing.
26. Respondent mother did not attend supervised visitation offered to her with this juvenile except for one week immediately after the child was taken into custody.
. . .
30. The respondent mother has neglected the child and this neglect continues to exist because the Court entered a previous order of neglect and dependency and the circumstanceshave not changed. The respondent parent has neglected the child and the child is neglected and dependent within the meaning of G.S. 7B-101 and it is probable that the neglect and dependency will continue.
The trial court made additional findings of fact as to Respondent-mother's ongoing substance abuse, failure to send any cards or gifts to S.J. or attempt to arrange for visitation with him, and her repeated criminal convictions and incarcerations since S.J. was taken into DSS custody.
Although Respondent-mother challenges some of these findings of fact, the record contains support for each finding, including numerous guardian ad litem and DSS caseworker reports, as well as testimony from the adjudication hearing. These findings are conclusive on appeal. See Williamson, 91 N.C. App. at 674, 373 S.E.2d at 320. Further, these findings are sufficient to support the trial court's conclusion that the child is neglected within the meaning of N.C. Gen. Stat. § 7B-101(15). Accordingly, we affirm the trial court's order finding neglect as a grounds to terminate Respondent-mother's parental rights.
As only one grounds is enough for termination, we decline to consider Respondent-mother's arguments as to the other grounds found by the trial court.

II.
Respondent-mother next challenges the trial court's conclusion that termination of her parental rights is in S.J.'s best interest. We find this argument to be without merit.
After finding that at least one of the statutory groundsexists, the trial court has discretion to terminate parental rights only upon also finding that it would be in the child's best interest. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). Factors in this determination include the age of the child, the likelihood of adoption, whether termination is in furtherance of the permanent plan of care for the child, the bond between the child and the parent, and the quality of the relationship between the child and any proposed adoptive parents. N.C. Gen. Stat. § 7B-1110(a) (2005). As a discretionary decision, the trial court's termination order will not be disturbed unless it could not have been the product of reason. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd per curiam, 360 N.C. 165, 622 S.E.2d 495 (2005).
Here, the trial court found that S.J. has been in the same foster home for some twenty months, since he was approximately four months old, and that the placement has been a beneficial, safe, and stable environment for him. Additionally, S.J. has "at least two families that are ready to adopt him," including his foster family, and "[R]espondent-mother has no bond with the juvenile." By contrast, the trial court found that S.J. has a strong bond with both his foster mother and her adult son. Finally, the trial court found that S.J. is an "adoptable juvenile" and that it would be in his best interest for Respondent-mother's parental rights to be terminated so that the permanent plan of adoption might be pursued.
The foregoing findings demonstrate that the trial court engaged in a thoroughly reasoned process in arriving at a rationaldecision to terminate Respondent-mother's parental rights. Accordingly, we affirm the order terminating Respondent-mother's parental rights.
Affirmed.
Judges ELMORE and ARROWOOD concur.
Report per Rule 30(e).
NOTES
[1] In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).